UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KENNETH CHIDESTER and MARY CHIDESTER, individually and as parents and next of kin to KEVIN CHIDESTER, deceased; and KENNETH CHIDESTER, individually, <br><br> Plaintiffs, <br><br> v. <br><br> KAZ, INC., a foreign corporation; and INDIAN ELECTRIC COOPERATIVE, INC., an Oklahoma corporation, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. 07-CV-0084-CVE-PJC |

**OPINION AND ORDER**

Now before the Court is Plaintiffs' Motion to Remand and Brief in Support (Dkt. # 13). Plaintiffs raise three arguments in their motion to remand: (1) the removing defendant, Kaz, Inc. ("Kaz"), has not proven that the amount in controversy exceeds $75,000; (2) the Court lacks subject matter jurisdiction because the parties are not completely diverse; and (3) Kaz's removal of this action was untimely under 28 U.S.C. § 1446(b).

**I.**

Plaintiffs Kenneth and Mary Chidester resided in a mobile home in Creek County, Oklahoma. On February 10, 2004, a fire occurred at their home resulting in significant personal injuries to Kenneth Chidester and causing the death of the Chidesters' son, Kevin Chidester. Plaintiffs filed a lawsuit in Creek County District Court against Kaz and Indian Electric Cooperative, Inc. ("Indian Electric") on February 9, 2006, one day before the statutes of limitations for negligence

and products liability expired. According to the complaint, Indian Electric negligently maintained the electrical lines for plaintiffs' home and Kaz sold plaintiffs a defective oil-filled radiator. The complaint also alleges that Indian Electric is an Oklahoma corporation, but Kaz is a foreign corporation. Plaintiffs seek compensatory damages in excess of $10,000, as well as punitive damages in excess of $10,000.

On February 7, 2007, Kaz filed a notice of removal asserting that this Court has subject matter jurisdiction under 28 U.S.C. § 1332, because Indian Electric was fraudulently joined as a party to defeat diversity jurisdiction. The notice of removal states that the amount in controversy exceeds $75,000, even though plaintiffs have pled simply that they seek "in excess of $10,000." Dkt. # 2, at 2. Kaz asserts that the case first became removable on January 31, 2007, when plaintiffs failed to identify an expert witness for their claim against Indian Electric. Plaintiffs filed a motion to remand on the grounds that the Court lacks subject matter jurisdiction over this case and that the removal was untimely.

## II.

Plaintiffs claim that this case was improperly removed to federal court, and request that the Court remand the case back to Creek County District Court. Plaintiffs assert that the notice of removal is defective, because defendants do not provide sufficient evidence to show that the amount in controversy exceeds $75,000 or that the parties are completely diverse. Plaintiffs also argue that removal was untimely under 28 U.S.C. § 1446(b), because Kaz did not remove the case within 30 days after it became removable.

**A.**

A federal court must ensure that the prerequisites for subject matter jurisdiction have been met before it may exercise jurisdiction over a case. Kennedy v. Lubar, 273 F.3d 1293, 1302 (10th Cir. 2001); Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974). "Subject matter jurisdiction cannot be conferred or waived by consent, estoppel, or failure to challenge jurisdiction early in the proceedings." Laughlin v. K-Mart Corp., 50 F.3d 871, 873 (10th Cir. 1995). A court must dismiss a case if at any stage of the proceedings it becomes apparent that subject matter jurisdiction does not exist. Tuck v. United Servs. Auto. Ass'n, 859 F.2d 842, 844 (10th Cir. 1988). When a case is originally brought in federal court by a plaintiff, it is presumed that the plaintiff can meet the amount in controversy; however, in a removed case, the burden is on the defendant(s) to prove that the plaintiffs' claim satisfies the jurisdictional amount in controversy requirement. Martin v. Franklin Capital Corp., 251 F.3d 1284, 1289-90 (10th Cir. 2001).

Any statute that grants a federal court subject matter jurisdiction is narrowly construed, especially removal statutes. Pritchett v. Office Depot, Inc., 420 F.3d 1090, 1094-95 (10th Cir. 2005). In cases "where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." Martin, 251 F.3d at 1290 (citing Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994)). When a case is removed to federal court, the defendant bears the burden to prove that both elements of diversity jurisdiction, complete diversity of the parties and the amount in controversy, have been satisfied. Huffman v. Saul Holdings Ltd. Partnership, 194 F.3d 1072, 1079 (10th Cir. 1999).

In Laughlin, the Tenth Circuit crafted an analysis to guide district courts when deciding whether a plaintiff is seeking more than $75,000 in a removed action:

3

> The amount in controversy is ordinarily determined by the allegations of the complaint, or, where they are not dispositive, by the allegations in the notice of removal. The burden is on the party requesting removal to set forth, in the notice of removal itself, the "underlying facts supporting [the] assertion that the amount in controversy exceeds [$75,000]." Moreover, there is a presumption against removal jurisdiction.

Laughlin, 50 F.3d at 873 (citations omitted). Diversity of citizenship and the amount in controversy "must be affirmatively established on the face of either the petition or the removal notice." Id. The amount in controversy must be proven by a preponderance of the evidence. Martin, 251 F.3d at 1290. If the complaint does not establish the jurisdictional amount in controversy on its face, the removing defendant must set forth facts in the notice of removal showing that the amount in controversy exceeds $75,000. The defendant must have more than a good faith belief that the amount in controversy exceeds $75,000, and must affirmatively allege facts sufficient to prove that the requisite amount in controversy is at issue. The Tenth Circuit's opinion in Laughlin implies that the removing defendant must offer an economic analysis of plaintiffs' claim for damages to prove the jurisdictional amount when it is not apparent from the allegations in the complaint. Barber v. Albertsons, Inc., 935 F. Supp. 1188, 1192 (N.D. Okla. 1995).

In this case, the complaint contains a general allegation that plaintiffs demand monetary damages in excess of $10,000. In accordance with OKLA. STAT. tit. 12, § 2008(A)(2), these allegations are sufficient and plaintiffs could have not have said more without violating section 2008. See OKLA. STAT. tit. 12, § 2008(A)(2) ("Every pleading demanding relief for damages in money in excess of Ten Thousand Dollars ($10,000.00) shall, without demanding any specific amount of money, set forth only that the amount sought as damages is in excess of Ten Thousand Dollars ($10,000.00), except in actions sounding in contract."). Even though general allegations of damages make removal difficult in some cases, this does not relieve the defendant of the burden to

4

prove the amount in controversy in removed actions. Archer v. Kelly, 271 F. Supp. 2d 1320, 1322 (N.D. Okla. 2003); Johnson v. Wal-Mart Stores, Inc., 953 F. Supp. 351, 353 (N.D. Okla. 1995); Barber, 935 F. Supp. at 1192. Kaz must establish by a preponderance of the evidence that the amount in controversy requirement is satisfied. Martin, 251 F.3d at 1290.

Both defendants have undertaken an economic analysis of plaintiffs' claims in an attempt to prove that the damages exceed $75,000. In multiple plaintiff cases, each plaintiff must individually satisfy the amount in controversy requirement. Lovell v. State Farm Mut. Auto. Ins. Co., 466 F.3d 893, 897 (10th Cir. 2006). However, when a single plaintiff has multiple claims against a defendant or against two or more defendants, the Court should consider the aggregate value of the claims for the purposes of the amount in controversy. Alberty v. Western Sur. Co., 249 F.2d 537, 538 (10th Cir. 1957). The Court will consider each plaintiffs' individually in determining if the amount in controversy requirement is satisfied.

The complaint states that Kenneth Chidester "has suffered injuries which are serious, painful, permanent and disfiguring in their nature, which injuries have prevented him from transacting his business, and forced him to expend large sums of money in an effort to effect a cure to his injuries." Dkt. # 2, Ex. 3, at 3. Defendants reasonably interpret this as a claim for personal injuries, lost wages, and medical bills by Kenneth Chidester. Plaintiffs suggest that the complaint was so general that it is impossible to tell whether Kenneth Chidester suffered "a burn injury or [a] scrape to the knee as he tried to escape from the house." Dkt. # 13, at 4. Given the strong language of the complaint, plaintiffs' argument for remand appears to be a deliberate attempt to minimize his claims to defeat federal subject matter jurisdiction. Shaw v. Dow Brands, Inc., 994 F.2d 364 (7th Cir. 1993) (a plaintiff can draft his pleadings to avoid removal, but a plaintiff can not manipulate

5

defendants by making conflicting statements about his claims to defeat removal). Although the extent of his injuries is not clear from the face of the complaint, Kenneth Chidester should not be allowed to assert that he has suffered personal injuries in his complaint, but then rely on the vague nature of his allegations for the purposes of a motion to remand. Defendants could rely on the plain language of the complaint as an indication that Kenneth Chidester suffered serious injuries. In response to a discovery request, plaintiff claims that he suffered third degree burns to over 50% of his body, but he has repeatedly refused to produce medical records or bills in response to defendants' requests for production of documents.[1] Dkt. # 20, Ex. 1, at 6. This does not establish a dollar amount for plaintiff's medical bills, but it does show that he suffered serious injuries.

Mary Chidester is not seeking damages for personal injuries, but she states that she "has suffered a loss of companionship, services, society and consortium because of the injuries to her loving spouse, Kenneth Chidester." Dkt. # 2, Ex. 3, at 4. The Oklahoma Uniform Jury Instructions provide that the measure of damages for a spousal loss of consortium claim should include past and future expenses for a spouse's medical care, treatment and services. OUJI § 4.9. This requires the Court to refer to the extent of harm suffered by Kenneth Chidester to determine his spouse's damages for loss of consortium. However, damages for loss of consortium do not automatically flow from an injury to a spouse, and the Court must rely on independent evidence to determine the nature of Mary Chidester's damages. Walker v. St. Louis-San Francisco Ry. Co., 646 P.2d 593, 600 (Okla. 1982). Mary Chidester's claim for damages is not necessarily the same as her husband's, and the Court can not assume that her damages will be equivalent to those of her husband. Defendants

---

[1] Indian Electric served a subpoena duces tecum on Hillcrest Health Center and discovered that Medicaid paid approximately $55,000 in medical bills for Kenneth Chidester's treatment following the fire.

have not provided an analysis of Mary Chidester's damages except to say that her claim is likely to be significant. Based on discovery responses, it is clear that she is not seeking damages for personal injuries or lost wages. Dkt. # 20, Ex. 1, at 5, 11. Neither defendant provides an estimate of Mary Chidester's damages for loss of consortium except to say that her damages are likely to exceed $10,000. However, based on the serious injuries suffered by Kenneth Chidester and his claim for lost wages, defendants have shown that Mary Chidester is likely to have a substantial claim for loss of consortium.

Certain elements of damages are applicable to both Kenneth and Mary Chidester. Plaintiffs' complaint states that they are jointly seeking compensation for damage to personal property in excess of $10,000. Plaintiffs have not provided a value for the lost personal property, but they have provided an itemized list of personal property that was allegedly destroyed in the fire. Dkt. # 19, Ex. 2, at 4. The complaint also provides that both plaintiffs are claiming damages for the wrongful death of their child, Kevin Chidester. By statute, the damages available for the wrongful death of a child include "medical and burial expenses, loss of anticipated services and support, loss of companionship and love of the child, destruction of parent-child relationship and loss of monies expended by parents or guardian in support, maintenance and education of such minor child." OKLA. STAT. tit. 12, § 1055. Neither party has presented objective evidence for the Court to consider when evaluating plaintiffs' claim for wrongful death damages. Except for plaintiffs' allegation that the damages for wrongful death are likely to exceed $10,000, the Court has no way to objectively assess these damages. Plaintiffs seek punitive damages for defendants' reckless disregard of the public safety, and the Court should consider punitive damages as part of the jurisdictional amount. Watson v. Blankinship, 20 F.3d 383, 386-87 (10th Cir. 1994). However,

defendants must do more than simply cite to the punitive damages statute as evidence of the amount in controversy. Flowers v. EZPawn Oklahoma, Inc., 307 F. Supp. 2d 1191 (N.D. Okla. 2004). The Court has no factual basis to assume that a punitive damages award is likely in this case, nor is there any way for the Court to determine the amount of any such award. Based on the allegations of the complaint, the Court can only assume that the punitive damages, if any were awarded, would exceed $10,000. Plaintiffs are also requesting attorneys fees under OKLA. STAT. tit. 12, § 940, because this is a case involving negligent or willful injury to property.

Plaintiffs have refused to respond to requests for admissions concerning the amount in controversy, and defendants argue that the Court should construe plaintiffs' unresponsive discovery answers as an admission that the amount in controversy exceeds $75,000. Local rules of civil procedure require defendants to serve a discovery request upon plaintiffs, such as an interrogatory or request for admission, asking plaintiffs to state whether they seek more than $75,000 in damages. LCvR 81.3 (defendants must attach discovery responses from at least one plaintiff as to the amount in controversy). The law is clear that defendants must still establish the amount in controversy by a preponderance of the evidence, even if plaintiffs fail to provide adequate discovery responses. Williams v. Best Buy Co., Inc., 269 F.3d 1316, 1319 (11th Cir. 2001); Barber, 935 F. Supp. at 1191. While plaintiffs' refusal to provide discovery responses does not provide an independent basis for removal, it can be a factor in the Court's determination that the amount in controversy requirement is satisfied. Rubel v. Pfizer, Inc., 361 F.3d 1016, 1020 (7th Cir. 2004); Wilbanks v. North American Coal Corp., 334 F. Supp. 2d 921, 925-26 (S.D. Miss. 2004); Schwenk v. Cobra Mfg. Co., 322 F. Supp. 2d 676, 680 (E.D. Va. 2004).

The Court finds that defendants have established the amount in controversy by a preponderance of the evidence. Even though some of defendants' arguments are general in nature, they have provided enough objective evidence for the Court to evaluate plaintiffs' claims for damages. Defendants have conducted an economic analysis based on all available information, and any evidentiary shortcomings are primarily due to plaintiffs' unwillingness to participate in discovery. In fact, plaintiffs' evasive discovery responses create an inference that the amount in controversy exceeds $75,000. Kenneth Chidester suffered severed severe personal injuries, including third degree burns over 50% of his body, and Indian Electric has presented evidence that his medical bills at one facility are approximately $55,000. When the Court also considers that he is claiming damages for lost wages, loss of personal property, the alleged wrongful death of Kevin Chidester, punitive damages, and attorneys fees, the Court finds that defendants have carried their burden to prove that Kenneth Chidester's claims satisfy the amount in controversy. Although Mary Chidester's claim for damages is less clear, defendants have presented substantial evidence that her loss of consortium claim could approach at least $55,000 based on the severe injuries to her husband. She also seeks damages for the loss of personal property, the wrongful death of her son, punitive damages and attorneys fees and, based on her allegations that the damages for each of these elements are likely to exceed $10,000, the Court finds by a preponderance of the evidence that her claims exceed $75,000. Combined with plaintiffs' resistance to discovery, the Court finds that defendants have established that both plaintiffs satisfy the amount in controversy requirement by a preponderance of the evidence.

**B.**

Plaintiffs argue that, based on the allegations of the complaint, they have a colorable claim for negligence against Indian Electric, and there is no evidence that they joined Indian Electric with the intention of defeating diversity jurisdiction. Defendants respond that plaintiffs have no possibility of recovery against Indian Electric, and this provides an adequate basis to find that Indian Electric was fraudulently joined. See American Nat. Bank & Trust Co. of Sapulpa, v. Bic Corp., 931 F.2d 1411, 1412 (10th Cir. 1991) ("If, as defendant suggests, plaintiffs joined the Oklahoma residents without good faith, defendant may remove on the grounds of fraudulent joinder."). If the Court finds that Indian electric was fraudulently joined, the Court will have subject matter jurisdiction over this action if the other requirements of diversity jurisdiction are met.

The Supreme Court has recognized that a defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921). When a defendant raises specific allegations of fraudulent joinder, the Court may pierce the pleadings to evaluate the defendant's argument.[2] Smoot v. Chicago, Rock Island & Pac. R.R. Co., 378 F. 2d 879, 881-82 (10th Cir. 1967); Dodd v. Fawcett Publications, Inc., 329 F.2d 82, 85 (10th Cir. 1964). "The burden of persuasion placed upon those who cry 'fraudulent joinder' is indeed a heavy one." Hart v. Bayer Corp., 199

---

[2] Plaintiffs argue that the Court should review the complaint to determine if it states a claim upon which relief can be granted, but the Court should not consider other evidence. However, the cases cited by plaintiffs actually support defendants' contention that the Court can look beyond the pleadings when ruling on a claim of fraudulent joinder. See Chesapeake & Ohio Ry. Co., 232 U.S. 146, 152 (1914); Slover v. Equitable Variable Life Ins. Co., 443 F. Supp. 2d 1272, 1279 (N.D. Okla. 2006); Frontier Airlines, Inc. v. United Air Lines, Inc., 758 F. Supp. 1399, 1404 (D. Colo. 1989). This does not reduce the burden on defendants to prove fraudulent joinder, but case law is clear that the Court can consider evidence other than the complaint.

F.3d 239, 246 (5th Cir. 2000) (quoting B., Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (5th Cir. 1981)).  Although the Court can pierce the pleadings, "[t]his does not mean that the federal court will pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty."  Smoot, 378 F.2d at 882.  Defendants can prove fraudulent joinder by showing that either: (1) plaintiffs' jurisdictional allegations are fraudulent and made in bad faith; or (2) plaintiffs have no possibility of recovery against the non-diverse defendant.  Slover v. Equitable Variable Life Ins. Co., 443 F. Supp. 2d 1272, 1279 (N.D. Okla. 2006).

Defendants argue that, as a matter of law, Indian Electric can not be held liable for plaintiffs' injuries.  Under Oklahoma law, "the maintenance of electrical lines in accordance with the requirements of the Oklahoma Corporation Commission and the National Safety Code will constitute a prima facie showing of lack of negligence."  Trett v. Oklahoma Gas & Elec. Co., 775 P.2d 275, 278 (Okla. 1989); see also Rudd v. Public Serv. Co. of Oklahoma, 126 F. Supp. 722, 723-24 (N.D. Okla. 1954); Daniel v. Oklahoma Gas & Elec. Co., 329 P.2d 1060, 1062 (Okla. 1958).  Compliance with the National Electric Safety Code ("NESC") is not a complete defense to tort liability.  Juvenal v. Okeene Public Schools, 878 P.2d 1026, 1030 (Okla. 1994).  However, once compliance with the NESC is established, the burden shifts to the plaintiffs to show exceptional circumstances which support a claim for negligence.  Shelley v. Kiwash Elec. Co-op., Inc., 914 P.2d 669 671-72 (Okla. 1996).

Defendants point to the absence of evidence that Indian Electric was negligent to support their argument that plaintiffs have no possibility of prevailing against Indian Electric.  Plaintiffs' complaint plainly states that "the fire which occurred at the Plaintiffs' home on the 10th day of

11

February, 2004, was the direct result of the negligence of [Indian Electric] in their [sic] failure to inspect, service and monitor their facilities and equipment . . . ." Dkt. # 2, Ex. 3, at 2. After reviewing defendants' responses to plaintiffs' motion to remand and Indian Electric's motion for summary judgment, it is clear that defendants have not provided affirmative evidence that Indian Electric actually complied with the NESC. This showing is necessary before the burden shifting analysis suggested in Shelley and Trett becomes applicable. Shelley, 914 P.2d at 671-72; Trett, 775 P.2d at 278. At this preliminary stage of the case, the Court is reluctant to rely on the absence of evidence to support a finding that plaintiffs have no evidence of negligence on the part of Indian Electric. See Dkt. # 12, Ex. D, at 1 (affidavit of Ronald P. Rhoten, Ph.D., stating that he has seen no evidence suggesting that Indian Electric failed to comply with NESC). The Court will not assume at this early stage that plaintiffs have no possibility of prevailing based only on defendants' claims that plaintiffs lack sufficient evidence. If defendants were frustrated with plaintiffs' discovery responses, they could have compelled responses in state court and, if plaintiffs continued to deny legitimate discovery requests, defendants could have sought an appropriate sanction. However, discovery is not completed and plaintiffs should be given a full opportunity to locate evidence in support of their claims.

Defendants argue that plaintiffs have not identified an expert witness and, without an expert witness to opine that Indian Electric was negligent, plaintiffs have no chance of success on the merits. Dkt. # 18, at 14; Dkt. # 20, at 4-8. The Oklahoma Supreme Court has recognized that "[e]lectricity and its distribution, the construction of lines for the transmission of the same, require expert workmen possessing scientific training. The proper handling thereof is beyond the knowledge of the ordinary man." Oklahoma Gas & Elec. Co. v. Oliphant, 45 P.2d 1077, 1080

(Okla. 1935). Plaintiffs sent defendants a document entitled "Plaintiffs' Disclosure of Expert Witnesses," but plaintiffs do not endorse an expert witness to discuss the proper maintenance of electrical lines.[3] Plaintiffs rely on defendants' witness lists to show that expert witnesses are available, even if plaintiffs have not endorsed an expert for their claim against Indian Electric. While plaintiffs are free to cross-examine defendants' experts, this does not address defendants' claim that plaintiffs have not hired an expert witness to support their allegations of negligence against Indian Electric. The Court finds that plaintiffs have not endorsed an expert on the proper maintenance of electrical lines but, at this stage of the case, this does not conclusively show that plaintiffs fraudulently joined Indian Electric.

Plaintiffs have indicated their intention to supplement their expert disclosures as the case progresses, and the state court did not enter an order preventing plaintiffs from supplementing expert discovery. The state court required plaintiffs to provide discovery responses about their expert witnesses, but this Court can not find any indication that these expert disclosures were intended to be final. There is no legal basis for this Court to conclude that plaintiffs are forever bound by their January 31, 2007 expert disclosures. If the Court were to deny plaintiffs' motion to remand, the Court would enter a new scheduling order and plaintiffs would have additional time to find an expert. Although plaintiffs should have been more diligent in their efforts to locate an electrical expert, defendants have not shown that plaintiffs have no possibility of producing expert testimony in support of their claims against Indian Electric.

---

[3] Plaintiffs have endorsed two experts for their products liability claim against Kaz and two experts on the issue of punitive damages. They have also identified a medical expert to discuss Kevin Chidester's cause of death.

The Court does not find that Indian Electric was fraudulently joined as a party. The allegations of plaintiffs' complaint clearly state a claim for negligence against Indian Electric and defendants have not shown that plaintiffs have no possibility of prevailing on the merits. The Court will not infer, based solely on the lack of evidence before discovery is complete, that plaintiffs can not prevail under Oklahoma law, nor will the Court rule on disputed issues of fact before discovery is complete. Defendants have not carried their heavy burden to prove that Indian Electric was fraudulently joined. Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983) ("If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to state court."); Smoot, 378 F.2d at 882 ("[t]his does not mean that the federal court will pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty."). Therefore, the parties are not completely diverse, and this Court does not have subject matter jurisdiction under 28 U.S.C. § 1332. Symes v. Harris, 472 F.3d 754, 758 (10th Cir. 2006); Gadlin v. Sybron Int'l Corp., 222 F.3d 797, 799 (10th Cir. 2000).[4]

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Remand and Brief in Support (Dkt. # 13) is **granted**. The Court hereby orders the Court Clerk to remand this case to the District Court in and for Creek County.

**DATED** this 9th day of April, 2007.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[4] It is not necessary to reach plaintiffs' argument that the notice of removal was untimely under 28 U.S.C. § 1446(b), because the Court has concluded that it lacks subject matter jurisdiction over plaintiffs' claims.